STATE OF CONNECTICUT *v.* TYRONE E. FERNANDEZ
(3379)

HULL, SPALLONE and DALY, Js.

Argued June 5—decision released August 20, 1985

*Kenneth Rosenthal,* assistant public defender, with whom, on the brief, was *Donald D. Dakers,* public defender, for the appellant (defendant).

*Donald O'Brien,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Mary Galvin,* assistant state's attorney, for the appellee (state).

HULL, J. This case involves the very narrow issue of whether the defendant's mental state was sufficiently in dispute to entitle him to a jury charge on the lesser included offenses of assault in the third degree by recklessness or assault in the third degree by criminal negligence.[1]

---

[1] General Statutes § 53a-61 (a) provides, in pertinent part: "A person is guilty of assault in the third degree when: . . . (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of . . . a dangerous instrument."

General Statutes § 53a-3 (13) defines "recklessly" as follows: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

General Statutes § 53a-3 (14) defines "criminal negligence" as follows: "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

General Statutes § 53a-3 (7) defines "dangerous instrument," in pertinent part, as follows: " 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

The defendant was tried before a jury on the charge of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[2] At the close of argument, the defendant filed written requests to charge on the lesser included offenses described above. Over the defendant's objection, the state filed a written request to charge on the lesser included offense of assault in the second degree under General Statutes § 53a-60 (a) (2).[3] In its charge, the court instructed the jury on the lesser included offense of assault in the second degree as requested by the state but did not charge the jury on either of the subsections of assault in the third degree as requested by the defendant. On May 11, 1984, following a rereading of the court's instructions on lesser included offenses at the jury's request, the defendant was convicted of assault in the second degree under General Statutes § 53a-60 (a) (2). The defendant appeals from the judgment on the verdict, sentencing him to five years incarceration.

On the basis of the evidence adduced at trial, the jury could reasonably have found the following facts. On May 14, 1983, at about 9 p.m., the complainant, Thomas Izzo, and Ralph Gaudino, along with their respective dates, Sharon McCreven and Tracy Brereton, drove into New Haven to attend the Agora Ballroom, an entertainment establishment located on Whalley Avenue around the corner from the defendant's residence.

Izzo parked his car on Norton Street and they all walked the short distance to the Agora. Sometime after

[2] General Statutes § 53a-59 (a) provides, in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of . . . a dangerous instrument . . . ."

[3] General Statutes § 53a-60 (a) provides, in pertinent part: "A person is guilty of assault in the second degree when: . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of . . . a dangerous instrument . . . ."

midnight the two women returned to the car and found that it had been broken into. They went back into the Agora and summoned Izzo and Gaudino. All four then returned to the car with Izzo in the lead.

Izzo discovered that a window of the car had been pried open and that a pocketbook, a radio, and a leather jacket were missing. Izzo, angry, noticed the defendant laughing nearby. Izzo pushed the defendant and a fight ensued. The two of them fell back into nearby bushes punching each other. They rolled around on the ground, Izzo punched the defendant on the head repeatedly and, at one point, he stood over the defendant pinning him to the ground face down. During the struggle, the defendant was able to free his left hand long enough to stab Izzo twice in the stomach with a sharp, flat bladed instrument. None of the witnesses was within arm's reach when the fight broke up.

Jeff Gray, a passerby who had also been at the Agora, testified that he observed Izzo on top of the defendant with his hands around the defendant's neck, and that he lifted Izzo off of the defendant, ending the fight. The defendant then went into his apartment. The victim began to breathe differently, noticing a feeling of air entering his abdomen. He saw blood on his shirt which he thought was the defendant's blood.

Meanwhile, Gaudino was involved in a fight with three or four males further up Norton Street. Izzo joined in this fracas to help Gaudino. Izzo testified that he took hold of two of the males and pinned both of them to the ground simultaneously. This fight was broken up by the arrival of the police. The officers ordered Izzo and his friends to leave the area.

Upon returning to the car, Izzo told McCreven that there was something wrong with him. After leaving the scene, Izzo circled back to retrieve a jack. He stopped and got out of the car and hurled the jack

through the front window of the defendant's apartment. Izzo was arrested shortly thereafter for criminal mischief. He was taken to the police station and then to Yale-New Haven Hospital. He had two small puncture wounds in his abdomen, one superficial and one penetrating his peritoneum. His recovery was rapid and unremarkable.

Izzo and his companions testified that the wounds were caused by the fight with the defendant. He felt some punches in his stomach. At no time did he observe any weapon. Izzo's three companions also testified that they saw blood on Izzo's shirt after the first fight. Izzo explained that he did not, at the scene, accuse the defendant of having caused his injuries because the police did not give him a chance to do so.

Instructions on a properly requested lesser included offense are critical to the fair presentation of a criminal case to a jury and implicate a defendant's fundamental right to have the jury pass upon every factual issue fairly presented by the evidence. The Supreme Court has reversed a number of recent convictions because of the trial court's failure to instruct the jury on lesser included offenses requested by the defendant. *State* v. *Burge,* 195 Conn. 232, 487 A.2d 532 (1985); *State* v. *Harris,* 189 Conn. 268, 455 A.2d 342 (1983); *State* v. *Falby,* 187 Conn. 6, 444 A.2d 213 (1982); *State* v. *Gordon,* 185 Conn. 402, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982); *State* v. *Smith,* 185 Conn. 63, 441 A.2d 84 (1981).

The parties agree that the controlling law is as follows. "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described

in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980); see also *State* v. *Falby,* supra, 28–29; *State* v. *Smith,* supra, 76–77; *State* v. *Maselli,* 182 Conn. 66, 72, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Rodriguez,* 180 Conn. 382, 407–408, 429 A.2d 919 (1980).

The state properly concedes that the first three prongs of *Whistnant* were met. First, the defendant filed a timely request to charge and, on several appropriate occasions, he took oral exception to the court's failure to give the charges requested. Second, the only distinguishing element between the crime charged and those requested is a more culpable mental state. Therefore, "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser," as required by *State* v. *Whistnant,* supra. *State* v. *Smith,* supra; *State* v. *Rodriguez,* supra. Third, the state proved that the defendant intentionally caused physical injury by means of a dangerous instrument and, in so doing, necessarily "some evidence" was introduced by the state "which justifies conviction of the lesser offense." *State* v. *Whistnant,* supra. This third prong is satisfied where the evidence suggests "at least a possibility" that the elements of the lesser offense have been established. *State* v. *Falby,* supra, 30.

At the fourth prong of the *Whistnant* test, the parties go their separate ways. As to this requirement, the elements distinguishing the greater from the lesser offense will be "sufficiently in dispute"; *State* v. *Whistnant,* supra; whenever the evidence permits reasonable minds to differ upon the existence or nonexistence of the missing element. *State* v. *Smith,* supra, 77–78.

The law on this subject has recently been exhaustively summed up by Justice Healey in *State* v. *Manley,* 195 Conn. 567, 489 A.2d 1024 (1985). The defendant in that case claimed that the court erred in refusing to charge on robbery in the third degree as a lesser included offense of robbery in the first degree. The count charged against the defendant required the state to prove that he committed the crime of robbery while "armed with a deadly weapon, to wit: a pistol or revolver." The defendant sought a lesser included offense charge on robbery in the third degree which requires no weapon. He claimed that neither the actual weapon used nor any bullet was ever recovered. The issue of the weapon's operability was sufficiently in dispute for the purposes of the fourth prong of *Whistnant* to require a jury charge on the lesser included offense requested.

"The focal question raised by the defendant's claim involves the fourth prong of the *Whistnant* test: whether the evidence of the element that differentiated the included offense of robbery in the third degree from robbery in the first degree, in this case the 'armed with a deadly weapon' element, was 'sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' [*State* v. *Vass,* 191 Conn. 604, 616–17, 469 A.2d 767 (1983)]; *State* v. *Whistnant,* supra. 'We must answer in the affirmative if viewing the evidence in the light most favorable to the defendant; *People* v. *Shuman,* 37

N.Y.2d 302, 304, 333 N.E.2d 363 (1975); reasonable minds could differ upon the existence or nonexistence of the element that distinguishes the inclusive from the included offense. *State* v. *Morin,* 180 Conn. 599, 610–11, 430 A.2d 1297 (1980) (*Healey, J.,* dissenting). Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence. *Stevenson* v. *United States,* 162 U.S. 313, 314, 16 S. Ct. 839, 40 L. Ed. 980 (1896). . . .' *State* v. *Smith,* 185 Conn. 63, 77–78, 441 A.2d 84 (1981); *State* v. *Gordon,* 185 Conn. 402, 423, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982)." *State* v. *Manley,* supra, 574–75.

In finding no error in the trial court's refusal to give the requested charge, the court stated: "In sum then, five witnesses for the state testified regarding the incident and the gunshot. The defense neither presented its own witnesses nor did it cross-examine *any* of these five witnesses regarding their testimony about the gunshot. While we agree with the defendant that jurors in criminal cases should be 'free to reject even uncontradicted testimony, if they do not find it credible'; *State* v. *Dudla,* 190 Conn. 1, 7, 458 A.2d 682 (1983); we are not persuaded by the defendant's claim that the 'proof' differentiating robbery in the third degree from the charged offense of robbery in the first degree was 'sufficiently in dispute' under the fourth prong of *Whistnant* to require an instruction on the claimed lesser included offense.

"While this defendant, of course, was under no obligation to present evidence in his own behalf, we recognize as a practical matter that the defendant, for purposes of the *Whistnant* test, ought, in order to be entitled to a jury instruction on a lesser included offense, to endeavor to place a particular element of the crime charged 'sufficiently in dispute' under the fourth prong of *Whistnant.* This could occur either

through the right of cross-examination, the major function of which is to put certain matters in dispute, or through evidence presented as part of the defendant's case. *State* v. *Vass,* supra, 619.

"In this case, the defendant, as was his choice, decided not to pursue either of these courses. It is not at all improper that the defendant, requesting a lesser included offense instruction, bear an obligation, weak though it may be, to demonstrate that there is evidence 'sufficiently in dispute' to warrant giving the requested instruction. See *Rouse* v. *United States,* 402 A.2d 1218, 1221 (D.C. App. 1979); *Day* v. *United States,* 390 A.2d 957, 962 (D.C. App. 1978). The fourth prong of *Whistnant* specifically requires that the 'proof' be 'sufficiently in dispute.' Such proof is 'sufficient' when it is 'marked by [a] quality [such as] to meet with the demands, wants or needs of a situation . . . .' Webster, Third New International Dictionary. In the *Whistnant* context, therefore, the proof is 'sufficiently in dispute' where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal. See *Sansone* v. *United States,* 380 U.S. 343, 349–50, 85 S. Ct. 1004, 13 L. Ed. 2d 882 (1965); *Sparf and Hansen* v. *United States,* 156 U.S. 51, 63–64, 15 S. Ct. 273, 39 L. Ed. 343 (1895); *United States* v. *Brown,* 551 F.2d 236, 239 n.4 (8th Cir. 1977). This rationale comports with the view that '[f]act finding does not require mathematical certainty. [But] [j]urors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn.' *Schulz* v. *Pennsylva-*

*nia R. Co.,* 350 U.S. 523, 526, 76 S. Ct. 608, 100 L. Ed. 668 (1956). Moreover, the trial court, in making its determination whether the proof is 'sufficiently in dispute,' while it must carefully assess all the evidence whatever its source, is 'not required to put the case to the jury on a basis [of a lesser included offense] that essentially indulges and even encourages speculations as to [a] bizarre reconstruction [of the evidence].' *United States v. Sinclair,* 444 F.2d 888, 890 (D.C. Cir. 1971)." *State v. Manley,* supra, 578–80. Finally, it need not be stressed that the defendant never has any obligation to testify or present any evidence in his own defense.

We now analyze the issue in this case through the prisms of the parties' disparate views. The state's view is that the defendant's trial strategy was to show that the victim was stabbed by one of the two other individuals he fought with that night and that he accused the defendant of stabbing him because the defendant had him charged with criminal mischief for throwing the jack.

The state claims that the jury could not have found that the defendant recklessly caused serious physical injury because their verdict of assault in the second degree under General Statutes § 53a-60 (a) (1) indicated that physical injury was caused by a dangerous instrument. They considered assault in the third degree under General Statutes § 53a-61 (a) (1) involving intent to cause physical injury with no dangerous instrument involved, and rejected it. Further, the evidence would not support assault in the third degree under General Statutes § 53a-61 (a) (3) concerning conduct causing physical injury with a dangerous instrument and acting with criminal negligence. The state rules out General Statutes § 53a-61 (a) (2) since the jury found, by its verdict, that a dangerous weapon was involved.

The defendant's argument makes it clear that the state's position begs the question. Under the instructions given, the jury had available the following alternatives: (1) assault in the first degree under General Statutes § 53a-59 (a) (1) which requires intent to cause serious physical injury and the causing of serious physical injury by means of a dangerous instrument; (2) assault in the second degree under General Statutes § 53a-60 (a) (2) which requires intent to cause physical injury and the causing of physical injury by means of a dangerous instrument; and (3) assault in the third degree under General Statutes § 53a-61 (a) (1) which requires intent to cause physical injury and the causing of physical injury.

Because of the trial court's refusal to charge on the subsections requested by the defendant, the jury was not permitted to consider either of the following: (4) assault in the third degree under General Statutes § 53a-61 (a) (2) which requires the reckless causing of physical injury; or (5) assault in the third degree under General Statutes § 53a-61 (a) (3) which requires the causing of physical injury with criminal negligence by means of a dangerous instrument.

Thus, the jury was provided legal options only with respect to the seriousness of the injury and the use of a dangerous instrument. The court's instructions and the state's position foreclosed the jury from considering whether or not the defendant recklessly or with criminal negligence assaulted the victim *with a dangerous instrument.*

There was much confusion in the evidence concerning the cause of Izzo's injuries. Izzo himself described the general rolling about and punching. Other witnesses for both the state and the defense testified that there was considerable physical contact, tussling, violence, and wrestling and rolling around on the ground. There

was also testimony of Izzo's intoxication and apparent belligerency and the defendant's distraught condition.

The case boils down to the subtle and special role of mental elements in criminal law. State of mind is essentially proven by circumstantial evidence based on inferences drawn from the circumstances of the crime. See, e.g., *State* v. *D'Antuono,* 186 Conn. 414, 423, 441 A.2d 846 (1982); *State* v. *Giguere,* 184 Conn. 400, 403–404, 439 A.2d 1040 (1981); *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980); *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977). Except in rare cases, it is a question of fact within the discretion of the jury. *State* v. *Rodriguez,* supra; *State* v. *Holley,* supra. It is in the field of intent particularly in which the court's instructions should take special account of the jury's fact-finding responsibilities. *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *Morrissette* v. *United States,* 342 U.S. 246, 274, 72 S. Ct. 240, 96 L. Ed. 288 (1952); *State* v. *Kurvin,* 186 Conn. 555, 558, 573–74, 442 A.2d 1327 (1982). This court has very recently noted the jury's "classic function of drawing inferences of intent." *State* v. *Dumlao,* 3 Conn. App. 607, 619, 491 A.2d 404 (1985), citing *State* v. *Giorgio,* 2 Conn. App. 204, 211, 477 A.2d 134 (1984).

Four recent cases in which the Supreme Court upheld a defendant's right to a lesser included offense instruction under the evidence prong of *Whistnant* involved state of mind as the differentiating element. See *State* v. *Burge,* supra; *State* v. *Falby,* supra; *State* v. *Gordon,* supra; *State* v. *Smith,* supra.

Most significantly, even identical evidence may support a jury finding of intent or recklessness (and thus, by compelling analogy, a finding of criminal negligence). See *State* v. *Marino,* 190 Conn. 639, 652, 462 A.2d 1021 (1983); *State* v. *Falby,* supra; *State* v. *Smith,* supra; *State* v. *Giguere,* supra.

The state's position in this case presents a classic case of wanting to have its inference and eat it too. The whole thrust of the state's case is based on inferences from circumstantial evidence. No one saw a dangerous instrument. The state's case rested first on inference from a jumble of facts that the defendant caused the victim's injuries and, secondly, that he did so intentionally. The court's charge limited the jury to differentiation between serious physical injury and physical injury, and to the use or absence of a dangerous instrument. What's sauce for the goose is sauce for the gander.[4] The jury, which was allowed to draw inferences of intent from the tangled web of evidence should likewise have been permitted to draw inferences as to recklessness or negligence.

The court "must appraise all the testimony and evidence to determine whether it is capable of more than one reasonable inference. *United States* v. *Comer,* 421 F.2d 1149, 1154 (D.C. Cir. 1970).

"Whether the fourth prong of the test for an instruction on a lesser included offense has been satisfied is a mixed question of law and fact that the trial court is uniquely positioned to pass upon, and its determination, unless clearly erroneous, will not be reversed." *State* v. *Manley,* supra, 581 n.12.

In this case, the failure to give the charge requested on lesser included offenses was clearly erroneous.

There is error, the judgment of the trial court is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[4] Attributed to Varro. Translated from the Latin in John Ray's English Proverbs, 1670.