STATE OF CONNECTICUT *v.* GEORGE LAWSON
(7358)

DALY, NORCOTT and LÁVERY, Js.

Argued April 4—decision released September 25, 1990

*Richard A. Fuchs,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of three counts of selling cocaine in violation of General Statutes § 21a-278 (b). The defendant claims that the trial court should not have (1) admitted into evidence tapes and transcriptions of conversations between an informant now deceased and the defendant, (2) permitted improper expert testimony, and (3) allowed improper rebuttal testimony. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In the late evening of April 22, 1987, Bridgeport police officers from the internal affairs division met with agents from the federal Bureau of Alcohol, Tobacco and Firearms, from the federal Drug Enforcement Agency (DEA) and Simon "Macho" Diaz, a confidential informant, at the Bridgeport office of the DEA. After Macho was searched and it was determined that he had no money or contraband on his person, he was fitted with a body transmitter (kell) and given $50 in United States currency. In the early morning hours of April 23, Macho was driven to the corner of Congress and Main Streets in Bridgeport.

Macho went into a bar located on Main Street. During that time, he was outside the view of the surveillance team. He was next observed talking to the defendant, a Bridgeport police officer, in a parking lot adjacent to the bar. This conversation was monitored. Macho could be heard stating that he had $50 and the defendant said he would get it for him.

One-half hour later, the team monitored a conversation between Macho and the defendant on Water Street, that was around the corner from the bar. The defendant drove up in a car that he parked on Water Street and was observed passing something to Macho. This conversation was also monitored. Thereafter, Macho met with law enforcement officers who searched him and discovered only one aluminum foil packet. The contents were analyzed and determined to have a 100 percent cocaine base.

On April 28, 1987, at 5 p.m., Macho met again with law enforcement officers at the DEA office in Bridgeport. Macho telephoned the defendant. This phone conversation was recorded. Macho said he would have "fifty" and the defendant indicated that he was working at Waldbaum's at Park and North Avenues from

6 p.m. to midnight and he invited Macho to visit. Surveillance teams were alerted. A kell was attached to Macho's waist after he was searched for money and contraband.

Macho was not given money. Instead, Agent William Kennedy remained nearby in a car, and held $50 to provide money to Macho if he agreed to sell drugs. Macho walked up to the defendant, who was in uniform, in the glass foyer of the store. After a conversation between the two, Macho returned to Kennedy's car, presumably to get the $50, while the defendant left the parking lot and returned approximately one-half hour later. Macho then returned to the surveillance car and handed the agent in charge four vials. Macho was further searched at the DEA office and no additional contraband was found. Because the recording of the conversation between Macho and the defendant was somewhat defective, another buy was set up using the same scenario. Another recording device was placed on Macho. All left the DEA office on the day of that buy around 8 p.m. and headed to Waldbaum's. At 8:55 p.m., the defendant's vehicle was seen in the Waldbaum's parking lot. Macho went to the defendant, who was still in uniform. Their conversation was again recorded. Macho returned to the car and gave Kennedy four vials. The vials were tested and found to contain 99 to 100 percent cocaine base. The defendant was subsequently arrested.

During the trial, after a hearing, the state introduced, over the defendant's objection, redacted tapes and transcriptions of the taped conversations between Macho, who had died in November, 1987, and the defendant. The redacted tapes allegedly contained evidence of the defendant's involvement in the sale of drugs. The state also introduced over the defendant's objection, expert witnesses to explain the meaning of the slang expressions used in the conversations. The defendant was convicted and this appeal ensued.

## I

The defendant first claims that the admission of the tapes and transcripts of conversations between himself and the deceased informant violated his right to confrontation under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[1] Specifically, he claims that the court should not have admitted the deceased informant's statements absent a finding that they were adoptive admissions.

Where the hearsay declarant is not available for cross-examination, the United States Supreme Court "has, as a general matter only, required the prosecution to demonstrate both the unavailability of the declarant and the 'indicia of reliability' surrounding the out-of-court declaration. [*Ohio* v. *Roberts,* 448 U.S. 56, 65–66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980)]." *Bourjaily* v. *United States,* 483 U.S. 171, 182, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987); *State* v. *Maldonado,* 13 Conn. App. 368, 375, 536 A.2d 600, cert. denied, 207 Conn. 808, 541 A.2d 1239 (1988). In *Ohio* v. *Roberts,* supra, 66, the United States Supreme Court deter-

---

[1] "The Sixth Amendment's Confrontation Clause, made applicable to the States through the Fourteenth Amendment; *Pointer* v. *Texas,* 380 U.S. 400, 403–405, [85 S. Ct. 1065, 13 L. Ed. 2d 923] (1965); *Davis* v. *Alaska,* 415 U.S. 308, 315, [94 S. Ct. 1105, 39 L. Ed. 2d 347] (1974), provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Ohio* v. *Roberts,* 448 U.S. 56, 62–63, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ." "[E]ach of these confrontation clauses affords the criminal defendant two types of protections: 'the right physically to face those who testify against him, and the right to conduct cross-examination.' " *State* v. *Jarzbek,* 204 Conn. 683, 692, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). The first of these two protections is at issue in this case.

mined that where the evidence "falls within a firmly rooted hearsay exception" the trial court need not make an independent inquiry into the reliability of the declaration. See also *Bourjaily* v. *United States,* supra, 183 (applied the *Roberts* rule to coconspirator exception); *State* v. *Wood,* 208 Conn. 125, 135–36, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988) (applied the *Roberts* rule to statements made to a treating physician).

In the present case, both the defendant and the state agree that the informant's statements are hearsay and that, if admissible at all, are admissible as adoptive admissions. We begin our analysis by holding that adoptive admissions are a firmly rooted hearsay exception and thus *if* the trial court did find that the informant's statements were adoptive admissions, the statements were properly admitted.

" 'Where hearsay accusations are sought to be introduced as evidence against a defendant in a criminal proceeding on grounds that the hearsay was "adopted" by defendant as an admission of his guilt, the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are *unequivocal, positive, and definite* in nature, *clearly showing* that in fact defendant intended to adopt the hearsay statements as his own.' " (Emphasis in original.) *State* v. *Morrill,* 197 Conn. 507, 537, 498 A.2d 76 (1985); see also *State* v. *John,* 210 Conn. 652, 682–83, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). The record demonstrates that, after an extensive hearing on a motion in limine filed by the defendant to exclude the use of the taped conversations and transcripts, the court stated in open court its reasons for admitting this evidence. Specifically, the court stated its basis for admitting the redacted statements of the informant as follows: "[T]he

court finds that with respect to these admissions [of the defendant], the statements of the confidential informant are an integral part of the claimed admissions. They are reciprocal and integrated utterances between the parties without which the statements would not be intelligible, and the state did cite *United States* v. *Lemonakis,* 485 F.2d 941 (D.C. Cir. 1973), for the proposition that the entire conversation should come in.''

The defendant argues that this statement by the court does not amount to a finding that they were adoptive admissions. The state argues that the court's statements do constitute such a finding. We agree with the state and hold that the court's finding did amount to a finding that the informant's statements were admissible as adoptive admissions. Accordingly, because the statements in question were adoptive admissions, which is an established hearsay exception, the defendant's right to confrontation was not violated.

## II

The defendant's second claim is that while various police officers testified as to their opinions concerning the terminology used in the conversations between Macho and the defendant, none of these opinions was based on reasonable probability. The defendant relies on *Healy* v. *White,* 173 Conn. 438, 443, 378 A.2d 540 (1977), which states: ''An expert witness is competent to express an opinion, even though he or she may be unwilling to state a conclusion with absolute certainty, so long as the expert's opinion, if not stated in terms of the certain, is at least stated in terms of the probable, and not merely the possible.''

The defendant contends that each expert in his testimony must employ the ''magic words'' that his opinion is ''reasonably probable.'' We reject the proposition

that certain formulaic words are essential when an expert renders an opinion. " 'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' *Towne* v. *Eisner,* 245 U.S. 418, 425, 38 S. Ct. 158, 62 L. Ed. 372 (1918). As long as it is clear that the opinion of the expert is expressed in terms of probabilities, the opinion should be submitted into evidence for a jury's consideration." *Struckman* v. *Burns,* 205 Conn. 542, 555, 534 A.2d 888 (1987). An examination of the record indicates that the disputed portions of the testimony met the standard of reasonable probability.

### III

The defendant's final claim is that the trial court impermissibly permitted the state to offer in rebuttal the testimony of Agent Anibal Torres of the Federal Bureau of Alcohol, Tobacco and Firearms. Torres was permitted to testify concerning his attempts to purchase drugs from the defendant.[2] At trial, the defendant testified on his own behalf and denied ever engaging in the sale of drugs.

Rebuttal evidence is usually confined to testimony that is directed at refuting the evidence given by the defendant or is in general contradiction of the testimony given by the defendant. *State* v. *Simino,* 200 Conn. 113, 123, 509 A.2d 1039 (1986); *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); B. Holden & J. Daly, Connecticut Evidence (1988) § 11. The admission of rebuttal evidence is ordinarily within the

---

[2] The defendant's brief does not contain any objection or reference to the rebuttal testimony of Bert Lancia, Commander of the Bridgeport police detective division, who denied having a conversation with the defendant about a homicide and denied telling him to play along with Macho. Part of the defendant's defense was that he was using Macho to ferret out information about wrongdoing in the Bridgeport police department.

sound discretion of the trial court. B. Holden & J. Daly, supra. In addition, a trial court has wide discretion in its rulings on relevancy of evidence. *State* v. *Simino,* supra. This rebuttal evidence was relevant and appropriate since it directly contradicted the testimony given by the defendant. We find nothing in the court's ruling on this issue to support the defendant's claim. Accordingly, the trial court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.