## STATE OF CONNECTICUT *v.* ASHTON SMITH
### (11764)

DUPONT, C. J., and SCHALLER and SPEAR, Js.

Argued March 30—decision released June 7, 1994

*Daniel S. Fabricant,* special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* assisant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *William Bumpus,* former assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (2).[1] The defendant claims that the trial

[1] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when . . . (2) with intent to disfigure

court improperly (1) excluded the written statement of an unavailable witness, (2) refused to instruct the jury on a lesser included offense, (3) refused to read back testimony to the jury, (4) permitted the state's expert witness to testify about ultimate issues of fact, and (5) charged the jury on the meaning of reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 9, 1990, at approximately 6 p.m., Thomas Farrell was driving his car on Farmington Avenue in Hartford. Farrell's car was directly behind that of the defendant and both drivers were preparing to turn into the parking lot of Cheese & Stuff. As the defendant turned into the parking lot, the victim, Alonzo Restrepo, was attempting to exit the lot in his car. The two cars blocked each other's path, and a heated argument ensued. The defendant got out of his car, ran over to the victim's car, reached in through the driver's side window and repeatedly punched the victim as he sat in the driver's seat. The defendant then took a knife from his back pocket and slashed the victim's face.

After being slashed, the victim emerged from his car carrying a lead pipe. The victim and the defendant squared off, holding their weapons. The defendant lost his footing and fell backward. The victim then stood over the defendant, threatening him with the lead pipe. The victim then retreated and the defendant returned to his car, which his passenger, Angela Coye, had

another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person . . . ."

The defendant's motions for judgment of acquittal of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and attempted assault in the first degree in violation of General Statutes § 53a-49 were granted by the trial court, the former before the case was submitted to the jury, the latter after the jury had returned a guilty verdict.

driven forward about twenty feet. The victim noted the defendant's license plate number before the defendant left the premises.

Officer Paul David Zodda of the Hartford police department arrived on the scene shortly after the altercation and traced the license plate number obtained by the victim to the defendant's car. The victim later identified the defendant from a photographic array. Farrell, who witnessed the entire sequence of events, testified for the state at trial and corroborated the victim's version of the incident. The defendant was convicted and this appeal ensued.

## I

The defendant first claims that the trial court violated his constitutional due process right to present a defense by improperly excluding from evidence the written statement of an unavailable witness Karen J. Higgins. The defendant concedes that this claim was not properly preserved at trial. He nevertheless maintains that his claim is reviewable under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), and alternatively, the plain error rule. Practice Book § 4185.

Under *Golding,* a defendant may prevail on a claim not preserved at trial only if four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 213 Conn. 239–40. "We are free . . . to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." *State* v. *Andrews,* 29 Conn. App. 533, 537, 616

A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993); *State* v. *Ulen,* 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993).

"The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Graham,* 33 Conn. App. 432, 442, 636 A.2d 852 (1994); see also *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987)." *State* v. *Crosby,* 34 Conn. App. 261, 264, 641 A.2d 406 (1994). The defendant has satisfied the first two conditions of *Golding* because the record is adequate for review and the right to present a defense is a constitutional right. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Miller,* 186 Conn. 654, 660, 443 A.2d 906 (1982); *State* v. *Jenkins,* 29 Conn. App. 262, 270, 614 A.2d 1249, cert. denied, 224 Conn. 916, 617 A.2d 171 (1992). The defendant's claim, however, fails under the third condition of *Golding* because the trial court's exclusion of Higgins' testimony was not a constitutional violation and did not deprive the defendant of a fair trial. Further, this claim did not rise to the level of plain error.[2]

At trial, the defendant sought to introduce into evidence a statement given by Higgins, a Cheese & Stuff

[2] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

Plain error review "is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Wright,* 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *State* v. *Ulen,* supra, 31 Conn. App. 38.

employee who had witnessed at least some of the events of August 9, 1990. As Higgins was not present to testify, the defendant attempted to introduce her statement under the "residual" exception to the hearsay rule. He argued that Higgins was unavailable to testify, that her statement was reliable and trustworthy, and that it was necessary because she was the only unbiased witness able to establish or corroborate his theory of self-defense.[3] He also claimed that the trial court was predisposed against admitting Higgins' statement into evidence. When the defendant first notified the court that Higgins was unavailable to testify, the court asked whether she was "another yuppie that went to Cheese & Stuff." The defendant argues that this comment deprived him of his right to a fair trial before an impartial judge. Although this remark was unfortunate, we cannot say that it deprived the defendant of a fair trial where the proffered evidence was properly excluded.

---

[3] Higgins' statement was as follows: "On August 9, 1990, I was at Cheese & Stuff, located on Farmington Avenue in West Hartford. I had worked there that day and was leaving the building at approximately 6 p.m. I exited the store through the Kenyon Street side and entered my car. I attempted to leave the parking lot through the Kenyon Street exit, but two cars were blocking the way. I was approximately twelve to fifteen feet distance from the cars. I heard the two drivers of each car arguing. I did not see any other people in the cars. The white man got out of his car, then reached into the car and pulled out a metal bat. The bat was approximately twelve to eighteen inches in length. The black man had already gotten out of his car. The two men began to argue. The white man was holding the bat in a threatening manner. I saw the black man attempt to kick the white man, but the black man missed and landed on the ground. The two men continued to fight. At some point, I saw the white man bleeding, but I never saw anything in the black man's hand. The entire incident lasted approximately five minutes.

"When the two men first began arguing, outside of their cars and with the white man holding the bat, I went back into Cheese & Stuff to tell the manager to call the police. When I came back out of Cheese & Stuff, I then witnessed the remainder of the events which I have stated above. It took me less than one minute to notify the manager and return to the parking lot, where I had left the engine of my car running."

"The 'residual,' or 'catch-all,' exception to the hearsay rule allows a trial court to admit hearsay evidence not admissible under any of the established exceptions if: (1) there is 'a reasonable necessity for the admission of the statement,' and (2) the statement is 'supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions.' " *State* v. *Oquendo*, 223 Conn. 635, 664, 613 A.2d 1300 (1992); *State* v. *Boyd*, 214 Conn. 132, 140, 570 A.2d 1125 (1990). The trial court refused to admit the statement on the ground that it lacked the requisite indicia of reliability and trustworthiness.

The trial court's determination of a witness' credibility will ordinarily not implicate due process concerns. "[E]very evidentiary ruling which denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error. . . . The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses. . . . In the exercise of his rights, the defendant, as well as the state, must comply with the established rules of evidence and procedure. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Boles,* 223 Conn. 535, 550, 613 A.2d 770 (1992). Excluding certain evidence does not vitiate the defendant's constitutional right to present a defense.

"We will not overturn a trial court's evidentiary ruling unless there is an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990); *State* v. *Robinson,* 227 Conn. 711, 732, 631 A.2d 288 (1993); *State* v. *Boles,* [supra, 223 Conn. 549]; *State* v. *Bailey,* 32 Conn. App. 773, 778, 631 A.2d 333 (1993). With respect to the trial court's discretion, great weight is accorded the trial court's decision and every

reasonable presumption will be indulged in favor of its correctness. *State* v. *Leonard,* 31 Conn. App. 178, 190, 623 A.2d 1052 (1993)." (Internal quotation marks omitted.) *State* v. *Bryan,* 34 Conn. App. 317, 327, 641 A.2d 443 (1994).

The circumstances surrounding Higgins' statement to defense counsel reveal that the statement " 'was not imbued with guarantees of reliability and trustworthiness sufficient to support its admission.' " *State* v. *Oquendo,* supra, 223 Conn. 667. First, defense counsel obtained Higgins' statement approximately sixteen months after the incident. The longer the interval between the witnessed event and the statement describing it, the less likely it is to be reliable and the more likely it is to be the product of reflective thought. Cf. *State* v. *Outlaw,* 216 Conn. 492, 499, 582 A.2d 751 (1990). Second, the statement was handwritten by defense counsel, and it elicited only favorable information.

Finally, even if Higgins' statement had been admitted under the residual hearsay exception, it would not have bolstered the defendant's self-defense claim. Higgins' statement corroborates rather than contradicts the version of the incident as described by the victim and Farrell. Higgins' statement reveals that she must have arrived on the scene after the defendant had slashed the victim. Her statement begins with the defendant outside of his car and the victim exiting his car with a lead pipe in hand. She observed the men arguing and the victim threatening the defendant with the pipe. She saw that the victim was bleeding, but did not see anything in the defendant's hand. Contrary to the defendant's assertion, Higgins described the events in the same sequence as did the victim. Accordingly, the defendant's contention that the jury could reasonably have inferred that the victim was the aggressor and that he acted in self-defense is without merit.

The reliability of a witness' hearsay statement is essential because the opposing party does not have the opportunity to cross-examine out-of-court declarants to test the truthfulness of their statements. *State* v. *Lawson,* 23 Conn. App. 358, 362, 580 A.2d 87 (1990). Here, the trial court did not abuse its discretion in refusing to admit Higgin's statement because the statement was not sufficiently reliable and trustworthy to satisfy the residual hearsay exception.

## II

The defendant next claims that the trial court improperly refused to instruct the jury, as requested, on the lesser included offense of assault in the third degree in violation of General Statutes § 53a-61 (a) (2).[4] The defendant specifically argues that the elements of permanence of the victim's injury and the defendant's intent were sufficiently in dispute so as to warrant a charge on the lesser included offense. We disagree.

Prior to the trial court's instructions to the jury, the defendant filed a written request to charge on the lesser included offense of assault in the third degree. The trial court refused to give the instruction and the defendant excepted.

Assault in the third degree in violation of § 53a-61 (a) (2) could be a lesser included offense of assault in the first degree in violation of § 53a-59 (a) (2). See *State* v. *Bunker,* 27 Conn. App. 322, 329–30, 606 A.2d 30 (1992). "In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), we held that a defendant is entitled to an instruction on a lesser included offense if he can demonstrate compliance with each of four conditions: '(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit

[4] General Statutes § 53a-61 (a) (2) provides that "[a] person is guilty of assault in the third degree when . . . he recklessly causes serious physical injury to another person . . . ."

the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser.' " *State* v. *Ray,* 228 Conn. 147, 152–53, 635 A.2d 777 (1993); *State* v. *Arena,* 33 Conn. App. 468, 479, 636 A.2d 398, cert. granted, 229 Conn. 918, 644 A.2d 914 (1994). The state claims that the defendant has failed to meet the first and fourth requirements of *Whistnant.* We agree that the defendant has not met the fourth requirement.[5]

In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant,* supra, 179 Conn. 576, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. *State* v. *Montanez,* 219 Conn. 16, 22–23, 592 A.2d 149 (1991); *State* v. *Herring,* 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "[T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Rasmussen,* 225 Conn. 55, 68, 621 A.2d 728 (1993).

---

[5] We decline to consider the state's alternate claim that the defendant's written request for a jury charge on the lesser included offense was insufficient under the first prong of *State* v. *Whistnant,* supra, 179 Conn. 588. The trial court decided the issue solely on the fourth prong of *Whistnant* and the state failed to raise the first prong claim in the trial court.

Under *Whistnant,* the evidence is "sufficiently in dispute where it is of such a factual quality that would permit the [jury] reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal. . . . Nonetheless, jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on the evidence . . . from which inferences can fairly be drawn. . . . They should not be encouraged to engage in speculation." (Citations omitted; internal quotation marks omitted.) *State* v. *Montanez,* supra, 219 Conn. 23.

On appeal, an appellate court must reverse the judgment rendered following a trial court's failure to give the requested instruction if "we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense. *State* v. *Falby,* 187 Conn. 6, 30, 444 A.2d 213 (1982)." (Internal quotation marks omitted.) *State* v. *Ray,* supra, 228 Conn. 155.

## A

The defendant claims that he placed the element of permanency of the victim's scar sufficiently in dispute to warrant a charge on the lesser included offense of assault in the third degree. We disagree.

The trial court found that the defendant did not satisfy the fourth condition of *Whistnant* because proof of the element of permanency, which distinguishes assault in the first degree under General Statutes § 53a-59 (a) (2), and the lesser included offense of assault in the third degree under General Statutes § 53a-61 (a) (2), was not sufficiently in dispute. Section 53a-59 (a) (2) requires proof of a serious and *permanent* disfigurement while § 53a-61 (a) (2) requires proof of a serious physical injury, which need not be permanent.

A defendant can place a particular element of the crime charged sufficiently in dispute "either through the right of cross-examination, the major function of which is to put certain matters in dispute, or through evidence presented as part of the defendant's case." *State* v. *Fernandez,* 5 Conn. App. 40, 47–48, 496 A.2d 533 (1985); *State* v. *Vass,* 191 Conn. 604, 619, 469 A.2d 767 (1983). Here, the defendant sought to place the element of permanence sufficiently in dispute through the cross-examination testimony of the state's medical expert, Larry Marcus, a facial plastic surgeon. On direct examination, Marcus testified that the scar on the victim's face was permanent. He also testified that, in his opinion, all scars are permanent. During cross-examination by defense counsel, Marcus stated that the victim did not seem very bothered by the scar and did not want corrective surgery right away. Marcus testified that the victim wanted to wait and see if the scar would improve by itself. The defendant argues that on the basis of Marcus' testimony, the jury could reasonably have disbelieved Marcus[6] and found that the scar on the victim's face was not permanent. Even if the jury disbelieved Marcus, the reverse of his testimony, namely that all scars are not permanent, has not been proved, nor has that issue been put in dispute. See *State* v. *McNeil,* 21 Conn. App. 519, 523, 574 A.2d 1314, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990).

The defendant claims that because the victim did not seem overly bothered by the scar and did not immediately seek corrective surgery, the permanency issue was, therefore, in dispute. This claim is without merit. The victim's attitude about the scar and the need for corrective surgery are completely irrelevant to the question of permanency.

---

[6] The jurors are "free to reject even uncontradicted testimony, if they do not find it credible." *State* v. *Dudla,* 190 Conn. 1, 7, 458 A.2d 682 (1983).

We are not persuaded by the defendant's claim that the proof of permanency of the victim's scar was sufficiently in dispute to require an instruction on the claimed lesser included offense.

B

The defendant further argues that his state of mind was sufficiently in dispute to warrant a charge on the lesser included offense of assault in the third degree.[7]

"The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged." *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980). To be guilty of assault in the first degree, of which the defendant was convicted, the defendant must *intend* to disfigure another person seriously and permanently. General Statutes § 53a-59 (a) (2). To act intentionally, the defendant must have had the conscious objective to harm the victim. General Statutes § 53a-3 (11).

Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. *State* v. *Francis,* 228 Conn. 118, 128, 635 A.2d 762 (1993); *State* v. *Smith,* 212 Conn. 593, 603, 563 A.2d 671 (1989). Intent may also be inferred from the surrounding circumstances. *State* v. *Russell,* 29 Conn. App. 59, 64–65,

---

[7] At trial, the following colloquy occurred:

"[Defense Counsel]: What I am saying is that the issue in dispute then is not whether or not it is a permanent scar under a serious physical injury, the issue is whether or not the defendant intended to disfigure, so it is a separate analysis under *Whistnant* when the court is looking at [assault in the first degree and assault in the third degree].

"The Court: [Assault in the first degree in violation of § 53a-59 (a) (2)] says, if I read it correctly, '[w]ith intent to disfigure another person seriously and permanently . . . he causes such injury.'

"[Defense Counsel]: But the question is, his intent to disfigure that is the element that is in dispute, what his intent was.

"The Court: No, did he cause such an injury which was a serious and permanent disfigurement."

612 A.2d 809, cert. denied, 224 Conn. 908, 615 A.2d 1049 (1992). "The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . *State* v. *Baldwin,* [224 Conn. 347, 368, 618 A.2d 513 (1993)]." (Citations omitted; internal quotation marks omitted.) *State* v. *Ash,* 33 Conn. App. 782, 792, 638 A.2d 633, cert. granted, 229 Conn. 916, 642 A.2d 1211 (1994). Intent may be gleaned from " 'circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident.' *State* v. *Allen,* [28 Conn. App. 81, 89–90, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992)]." *State* v. *Ash,* supra, 793; *State* v. *Medinā,* 228 Conn. 281, 303, 636 A.2d 351 (1994); *State* v. *Commerford,* 30 Conn. App. 26, 34–35, 618 A.2d 574 (1993). " 'Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct. . . . *State* v. *Montanez,* [supra, 219 Conn. 20].' " *State* v. *Raguseo,* 225 Conn. 114, 120, 622 A.2d 519 (1993).

The defendant contends that the element of intent is sufficiently in dispute to warrant an instruction on third degree assault because the evidence does not exclude the reasonable hypothesis that he acted with a merely reckless mens rea. "A person acts recklessly with respect to a particular result or a circumstance described by a statute 'when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. . . .' General Statutes § 53a-3 (13); *State* v. *Bunkley,* 202 Conn. 629, 643, 522 A.2d 795 (1987) . . . ." (Citation omitted.) *State* v. *Jupin,* 26 Conn. App. 331, 340, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). "Recklessness involves a subjective realization of that risk and a conscious decision to ignore it. *State* v. *Bunkley,* supra, [643]. It does not

involve intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result. *Griffin* v. *Parker,* [219 Conn. 363, 370, 593 A.2d 124 (1991)]; *State* v. *Beccia,* 199 Conn. 1, 4, 505 A.2d 683 (1986)." (Internal quotation marks omitted.) *State* v. *Jupin,* supra, 340. Like intent, the " 'state of mind amounting to recklessness may be inferred from conduct.' " *State* v. *Bunkley,* supra, 645, quoting *Mooney* v. *Wabrek,* 129 Conn. 302, 308, 27 A.2d 631 (1942).

The defendant claims that the evidence shows that he did not intentionally slash the victim but rather acted *recklessly,* in the heat of the moment, pursuant to General Statutes §§ 53a-61 (a) (2) and 53a-3 (13). He contends that the confrontation "erupted almost instantaneously in the heat of unrestrained emotion with no time for reflection or cool reaction." The victim testified that it was a hot, humid day, that the defendant was yelling vulgarities and waving his hands in the air, and that the incident developed so quickly that the victim did not have time to avoid the confrontation by putting up the electric window or backing up the car.

"[A] person cannot at one and the same time act both intentionally and recklessly with regard to the same act and the same result . . . ." *State* v. *Hinton,* 227 Conn. 301, 312, 630 A.2d 593 (1993); *State* v. *King,* 216 Conn. 585, 594, 583 A.2d 896 (1990). "The court 'must appraise all the testimony and evidence to determine whether it is capable of more than one reasonable inference . . . .' " (Citation omitted.) *State* v. *Fernandez,* supra, 5 Conn. App. 52. We conclude that the jury could not reasonably and logically have inferred from these facts that when the defendant slashed the victim, he was behaving recklessly. His loss of temper, the heat of the day, and the rapid sequence of events do not support a finding of recklessness. Rather, the defendant's actions clearly support a finding of intentional conduct.

The evidence reveals that the defendant quickly exited his car and ran toward the victim's car. He reached through the window on the driver's side of the victim's car, grabbed the victim by the shirt, and began punching him in the head and face. He threatened the victim that "he [was] going to teach [him] a fucking lesson," at which point the defendant deliberately pulled a knife out of his back pocket and intentionally slashed the victim's face, causing a permanent scar. The defendant then fled the scene in his car.

Viewing the evidence in the light most favorable to the defendant, we conclude that the defendant's state of mind was not sufficiently in dispute so as to entitle him to a lesser included offense charge of assault in the third degree.

III

The defendant next claims that the trial court improperly denied his request to read back to the jury the cross-examination testimony of a state's witness that counsel and the court earlier had agreed would be read. He argues that the court's ruling deprived him of the right to a fair trial in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. Although the defendant concedes that he did not properly preserve this claim at trial, he seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 233, or the plain error doctrine. Practice Book § 4185. Although the first two conditions of *Golding* are met because there is an adequate record for review and because the defendant's claim that he was denied a fair trial is of constitutional magnitude, we conclude that a review of the merits of the defendant's claim shows that no constitutional violation exists that clearly deprived the defendant of a fair trial. Further, we are not persuaded that the trial court's failure to read back the cross-

examination testimony, if in error, was such that it affected the fairness and integrity of the proceedings.

During deliberations, the jury asked the trial court to read back the testimony of Farrell, who witnessed the events at the scene of the victim's stabbing. Out of the presence of the jury, the trial court informed counsel that it would replay the direct and cross-examination testimony of Farrell. During the playback of Farrell's direct testimony, however, the jury indicated to the court that it had heard all that it wanted to hear. After the jury was excused to resume deliberating, the defendant asked that the cross-examination testimony also be replayed because it was improper for the jury to hear only the direct testimony. The court denied the request and the defendant excepted.

"The trial court has discretion to grant a jury's request to review testimony. Practice Book § 863;[8] *State* v. *Rivera,* 223 Conn. 41, 48, 612 A.2d 749 (1992). What portions of the record, if any, will be submitted to the jury for their consideration is a matter of sound judicial discretion. *State* v. *Bennett,* 171 Conn. 47, 59, 368 A.2d 184 (1976)." (Internal quotation marks omitted.) *State* v. *Harris,* 227 Conn. 751, 770–71, 631 A.2d 309 (1993). The defendant now asserts that the trial court abused its discretion by refusing to read back Farrell's cross-examination testimony, notwithstanding that the jury stated it did not want to hear it.

*State* v. *Rivera,* supra, 223 Conn. 41, and *State* v. *Harris,* supra, 227 Conn. 751, are dispositive of this issue. See also *State* v. *Tucker,* 226 Conn. 618, 629 A.2d 1067 (1993); *State* v. *Nowakowski,* 188 Conn. 620, 452

---

[8] Practice Book § 863 provides: "If the jury after retiring for deliberations request a review of certain testimony, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the judicial authority, after notice to the prosecuting authority and counsel for the defense, shall have the requested parts of the testimony read to the jury."

A.2d 938 (1982). In *Rivera,* the jury asked the trial court to replay the testimony of two witnesses and then stated that it had heard enough after hearing the direct examination of one witness. The defendant objected, arguing that the jury should also be required to rehear that witness' cross-examination testimony. Our Supreme Court concluded that the trial court did not abuse its discretion by not requiring the jury to hear more testimony than it wanted to hear. *State* v. *Rivera,* supra, 48. The court also stated that "[w]e cannot conclude, as the defendant seems to advocate, that the trial court was required as a matter of law to replay more of the witnesses' testimony than the jury believed it needed to rehear in order to reach a verdict." Id.

Furthermore, the trial court's discretion was not limited by the agreement between the court and counsel, made out of the presence of the jury, to read back Farrell's entire testimony. See *State* v. *Harris,* supra, 227 Conn. 771. "Because the jury asked that the reading of the testimony stop . . . the trial court did not abuse its discretion when it halted the reading of the testimony. Unless the court was convinced that an injustice would result, it was not, despite any agreement, required to force the jury to listen to what it did not want to hear. The prior agreement postulated that the reading of the unrequested testimony would have some purpose. The jury's request, however, that the reading be stopped . . . clearly indicated that the evidence was now firmly fixed in its collective mind and that no further refreshing of its memory was necessary for it to arrive at a verdict. The agreement was not a contract that compelled the trial court to comply with its terms if compliance would interfere with its proper conduct of the trial." Id., 771–72. Accordingly, the defendant's claim that the trial court abused its discretion is without merit.

## IV

The defendant next claims that the trial court improperly permitted the state's expert witness to testify as to ultimate issues of fact. We disagree.

Marcus, a facial plastic surgeon, testified for the state that the scar on the victim's face was "definitely permanent . . . [b]ecause all of the scars that I have ever seen are permanent . . . I have never seen a scar just totally dissolve." Marcus further testified that the victim's injury was a "serious laceration." The defendant excepted to both of Marcus' statements, arguing that the scar's permanence and the degree of injury sustained were ultimate issues of fact for the jury to decide.

The defendant further argued that Marcus' testimony was unnecessary for the following reasons: (1) During a colloquy between the court and defense counsel regarding whether the element of permanence was in dispute, the court stated that "we don't even need a doctor to tell us that [the scar is permanent]. You and I know that when you get a scar, even though it may not be as visible as it once [was], it is there forever"; (2) the victim described his injury in detail to the jury; and (3) the jury saw not only pictures of the scar, but the victim came off the witness stand to show it to the jurors.

"The admissibility of opinion testimony of expert witnesses is a matter within the discretion of the trial court." *State* v. *Christiano,* 228 Conn. 456, 461, 637 A.2d 382 (1994); *State* v. *Douglas,* 203 Conn. 445, 452, 525 A.2d 101 (1987); *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average per-

son, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Borrelli,* 227 Conn. 153, 165, 629 A.2d 1105 (1993); *Knock* v. *Knock,* 224 Conn. 776, 783–84, 621 A.2d 267 (1993); *State* v. *Spigarolo,* 210 Conn. 359, 376, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

"An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by the trier of fact." *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988); *State* v. *Spigarolo,* supra, 210 Conn. 372; *Kowalewski* v. *Mutual Loan Co.,* 159 Conn. 76, 80, 266 A.2d 379 (1970); *In re Noel M.,* 23 Conn. App. 410, 422, 580 A.2d 996 (1990). An expert may, however, "give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodgers,* 207 Conn. 646, 652, 542 A.2d 1136 (1988); *State* v. *Vilalastra,* supra, 41. "[E]vidence of the . . . medical effect upon the human system of the infliction of injuries, is generally not within the sphere of the common knowledge of a lay witness"; *Collette* v. *Collette,* 177 Conn. 465, 471, 418 A.2d 891 (1979); and requires expert testimony. *State* v. *McClary,* 207 Conn. 233, 241, 541 A.2d 96 (1988); *Sickmund* v. *Connecticut Co.,* 122 Conn. 375, 379, 189 A.2d 876 (1937). The trial court's exercise of discretion in admitting expert testimony is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. *State* v. *Borrelli,* supra, 227 Conn. 166; *Vickers* v. *Jessup,* 32 Conn. App. 360, 366, 629 A.2d 457, cert. granted, 227 Conn. 922, 632 A.2d 701 (1993).

Marcus' expert opinion was properly and necessarily admitted to explain the full extent and cause of the victim's obvious injury. See *State* v. *McClary,* supra,

207 Conn. 241. First, as a facial plastic surgeon, Marcus possessed a knowledge and skill directly relevant to the anatomical area of the injury. Second, despite the trial court's assertion to the contrary, the permanence of a scar is not necessarily an obvious matter within the common knowledge of the average person. Finally, Marcus' expert testimony assisted the jury in intelligently assessing the ultimate issue as to whether assault in the first degree had occurred.

We conclude, therefore, that the trial court did not abuse its discretion in allowing the state's medical expert to testify about the permanence and severity of the facial injury.

## V

The defendant's final claim is that the trial court violated his due process right to a fair trial and misled the jury when it improperly defined a reasonable doubt as "a doubt for which a valid reason can be assigned." He seeks review of this claim under *State* v. *Golding,* supra, 213 Conn. 233. At oral argument, the defendant, although not abandoning this claim, conceded that he would not prevail on the merits. We agree.

Our Supreme Court has specifically upheld the constitutionality of this precise instruction. See *State* v. *DePastino,* 228 Conn. 552, 573, 638 A.2d 578 (1994); *State* v. *Campbell,* 225 Conn. 650, 663–66, 626 A.2d 287 (1993) (*Borden, J.,* concurring); *State* v. *Adams,* 225 Conn. 270, 290, 623 A.2d 42 (1993); *State* v. *Thomas,* 214 Conn. 118, 119 n.1, 570 A.2d 1123 (1990); *State* v. *Findlay,* 198 Conn. 328, 345–46, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Leonard,* 31 Conn. App. 178, 200–201 and n.17, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993), motion to dismiss appeal granted, January 7, 1994; *State* v. *Johnson,* 29 Conn. App. 584, 617 A.2d 174 (1992), aff'd, 228 Conn.

59, 634 A.2d 293 (1993). As the instruction in question is not constitutionally defective, we will not review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.