### STATE OF CONNECTICUT *v.* LUIS A. RIVERA
### (14532)

CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued June 10—decision released July 21, 1992

*David J. Laudano,* special public defender, with whom, on the brief, was *Raymond W. Ganim,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert A. Lacobelle,* former assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Luis A. Rivera, was charged in an information with the crimes of murder, burglary in the first degree and assault in the third degree in violation of General Statutes §§ 53a-54a (a), 53a-101 (a) (1) and 53a-61 (a) (3), respectively.[1] Following a trial, a jury found the defendant guilty of all three charges. He was sentenced to concurrent terms of imprisonment of thirty years on the murder count, five years on the burglary count and one year on the assault count. The defendant then appealed his convictions.[2] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant and Camelia Bellido, although unmarried, had lived together as husband and wife for nineteen years. Some time in 1986, however, the couple separated, and, in August, 1989, Bellido was dating the victim, Aurelio Monge. At approximately 9 p.m. on August 18, 1989, the victim arrived at Bellido's apartment in Bridgeport and began to take a shower. While the victim was in the shower, the defendant approached Bellido's apartment house from the street, began shouting to Bellido, and eventually threw a stone through one of her windows. Thereafter, the defendant forced his way into Bellido's apartment house by kicking in the front door. Having observed the defend-

[1] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

General Statutes § 53a-101 (a) (1) provides in pertinent part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with . . . a deadly weapon or dangerous instrument . . . ."

General Statutes § 53a-61 (a) (3) provides: "A person is guilty of assault in the third degree when . . . (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

[2] Although the defendant initially appealed to the Appellate Court, that court lacked jurisdiction; General Statutes § 51-199; and we transferred the appeal to this court.

ant's approach, Bellido deduced that the defendant was looking for a fight and telephoned her daughter, Mildred Sanjurjo, and asked her to telephone the police.

Realizing that the defendant was approaching her apartment, Bellido attempted to lock the door to prevent his entry, but the defendant overpowered her and pushed his way into the apartment. Upon entering the apartment, the defendant demanded to know who was in the apartment with Bellido, and she answered that she was alone. The defendant replied that he would find out who was in the apartment and that he would kill both Bellido and whomever he found in the apartment with her. The defendant then began to search the apartment, and heard the shower running. Having heard the shower, the defendant took a knife from the kitchen and went into the bathroom, where he discovered the victim. There, the defendant held the victim at knife point and ordered him, unclothed, to leave the apartment. As he left, the victim, still wet from the shower, fell down a flight of stairs. After the victim had fallen, the defendant approached him and lifted the knife above his shoulder to stab the victim. The defendant then began swinging the knife at the victim as the victim attempted to protect himself. One of the defendant's knife thrusts entered the victim's chest. Severely injured, the victim ran from the house and into the street where he collapsed. As the victim lay in the street, the defendant said, "You finally die you son of a bitch." Although the victim was hospitalized almost immediately, he died four days after the assault as a result of a stab wound to his heart.

On appeal, the defendant claims: (1) that he was deprived of a fair trial when the trial court improperly denied his request to reinstruct the jury regarding the elements of first and second degree manslaughter; (2) that the trial court improperly failed to replay specified testimony to the jury; and (3) that he is entitled

to a judgment of acquittal of the crime of murder because the state's evidence was insufficient to establish beyond a reasonable doubt that he intended to cause the victim's death.

I

The defendant first claims that he was deprived of a fair trial because the trial court improperly failed to reinstruct the jury, pursuant to his request, regarding the elements of first and second degree manslaughter. Particularly, he claims that the trial court's failure to reinstruct the jury regarding the manslaughter offenses unduly emphasized the defendant's burden of proof with respect to the affirmative defense of extreme emotional disturbance.[3] We disagree.

At the conclusion of the evidence, the trial court instructed the jury regarding, inter alia, the elements of murder and manslaughter in the first and second degrees. The court also informed the jury of the elements of the affirmative defense of extreme emotional disturbance. The defendant concedes that these initial instructions were accurate, and he raises no claim of error regarding their content.

During the course of the first day of its deliberations, the jury sent a note to the trial court requesting a reinstruction as to the definition of extreme emotional disturbance. In response, the trial court again informed the jury of the elements of extreme emotional disturbance and the burden of proof regarding that defense.

---

[3] General Statutes § 53a-54a (a) provides in relevant part: "[I]n any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

On the second day of its deliberations, the jury requested a written copy of the jury instructions, and the trial court informed it that written instructions were not ordinarily provided to the jury but that it would repeat any portion of the instructions that the jury wished to rehear. On the third day of its deliberations, the jury again requested the trial court to provide a clear definition of extreme emotional disturbance, and it also requested a reinstruction on manslaughter in the first degree. The trial court then accurately reinstructed the jury regarding the elements of extreme emotional disturbance and manslaughter in the first degree.

During the fourth day of the jury's deliberations, it requested the trial court to explain the circumstances under which the burden of proof lies with the defendant. The trial court informed the jury that the state had the burden of proving beyond a reasonable doubt all of the elements of the charged offenses and that the defendant was required only to prove the affirmative defense of extreme emotional disturbance by a preponderance of the evidence. The court clearly informed the jury that it need not consider the affirmative defense unless it were to find that the state had proven all of the elements of the crime of murder beyond a reasonable doubt. Following the court's instruction, the defendant took an exception, claiming that the trial court should have explicitly informed the jury that the defendant had no burden of proof regarding the crime of manslaughter. Thereafter, the court recalled the jury to the courtroom and instructed them that the defendant had no burden regarding the elements of manslaughter, and that the defendant's only burden was to prove extreme emotional disturbance. Later that day, the jury sent another note to the trial court asking, "[D]oes the defendant have to prove extreme emotional disturbance? Yes or no [?]" Once again, the trial

court completely and accurately informed the jury of the elements of extreme emotional disturbance and informed it that the defendant had the burden of proving extreme emotional disturbance by a preponderance of the evidence, but that the jury would not have to consider that issue unless it found proven beyond a reasonable doubt that the defendant had intentionally killed the victim.

Following the jury's last request regarding the burden of proof of extreme emotional disturbance, the defendant requested that the court reinstruct the jury regarding, inter alia, the elements of manslaughter in the first and second degrees. The defendant asserted that he believed that the jury was confused and required reinstruction on the elements of those crimes. The trial court concluded, however, that it had accurately responded to the jury's inquiries and that the jury was capable of rendering a fair verdict. Thereafter, the defendant moved for a mistrial, asserting that the jury was hopelessly confused, and that the defendant's burden of proof on extreme emotional disturbance had been overemphasized by the trial court's numerous reinstructions. The trial court denied the defendant's motion for a mistrial.

Practice Book § 864 provides that "[i]f the jury, after retiring for deliberations, request additional instructions, the judicial authority, after notice to the parties, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions." Furthermore, "[i]f the judicial authority gives additional instructions, he also may give or repeat other instructions in order to avoid undue emphasis on the additional instructions. . . ." Practice Book § 861. The plain language of § 861 clearly indicates that the trial court has discretion to determine whether additional instructions need be given.

Similarly, "[a] determination of whether a mistrial is warranted is left to the sound judgment and discretion of the trial judge. *State* v. *Gaston,* [198 Conn. 490, 496, 503 A.2d 1157 (1986)]." *State* v. *Hill,* 201 Conn. 505, 510, 523 A.2d 1252 (1986).

Although the jury asked several questions regarding the elements of the crimes charged and the burden of proof of extreme emotional disturbance, the trial court consistently responded with accurate answers to the inquiries. While the court might have determined that a reinstruction on the crimes of manslaughter in the first and second degrees was appropriate, to have decided otherwise did not constitute an abuse of discretion. *State* v. *Grant,* 221 Conn. 93, 109, 602 A.2d 581 (1992). Contrary to the defendant's assertion, the trial court's instructions and reinstructions were "clear and comprehensible" and sufficient to "provide guidance to the jury in applying the law to the facts it [found] established." *State* v. *Fletcher,* 10 Conn. App. 697, 704, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988); see *State* v. *Wood,* 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); *State* v. *Preyer,* 198 Conn. 190, 199–200, 502 A.2d 858 (1985). Accordingly, we conclude that there is no merit to the defendant's claim that he was deprived of a fair trial.

II

The defendant next claims that the trial court improperly denied his request to replay to the jury the tape-recorded cross-examination testimony of two state's witnesses. We do not agree.

In the course of the jury's deliberations, it asked the trial court to replay the testimony of Bellido and Wanda Rios, another of the defendant's daughters, who was also a witness to some of the events at the scene of the victim's stabbing. The court ordered the replay of Bel-

lido's testimony. After Bellido's direct examination had been almost completely replayed, the jury presented another note to the trial court stating that it had heard enough of Bellido's testimony, and that it no longer wanted to rehear Rios' testimony. The defendant objected to the jury's request to discontinue the replaying of the testimony. He asserted that fairness required that, because the jury had reheard nearly all of Bellido's direct examination testimony, it should also rehear her cross-examination testimony. On appeal, the defendant asserts that the trial court should have replayed the cross-examination testimony of both Bellido and Rios, despite the jury's request that it not do so.

Practice Book § 863 provides: "If the jury after retiring for deliberations request a review of certain testimony, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the judicial authority, after notice to the prosecuting authority and counsel for the defense, shall have the requested parts of the testimony read to the jury." "A determination of the reasonableness of the request for a review of testimony lies within the discretion of the trial court." *State* v. *Fletcher*, supra, 703. The defendant now asserts, in effect, that it was unreasonable as a matter of law for the jury to request, and the court to order, a replay of Bellido's direct examination but not her cross-examination. He further argues that once the jury requested to rehear Rios' testimony, the trial court was obligated to replay her cross-examination, despite the jury's withdrawal of its request prior to rehearing any of her testimony. We conclude, however, that the trial court acted within its discretion when it allowed the jury to rehear only that testimony that the jury indicated that it wished to rehear. We cannot conclude, as the defendant seems to advocate, that the trial court was required as a matter of law to replay more of the witnesses' testimony than the jury believed it needed to rehear in order to reach a verdict.

## III

Finally, the defendant claims that the state's evidence was insufficient to prove him guilty of murder because it failed to establish beyond a reasonable doubt that he intended to cause the victim's death. We are not persuaded.

" 'Whether we review the findings of a trial court or the verdict of a jury, our underlying task is the same . . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Steiger,* 218 Conn. 349, 378, 590 A.2d 408 (1991)." *State* v. *Roseboro,* 221 Conn. 430, 434, 604 A.2d 1286 (1992).

The defendant asserts that the jury could not reasonably have found beyond a reasonable doubt that he intended to cause the victim's death. In support of this claim, the defendant makes three arguments: (1) overwhelming evidence demonstrated that the defendant was in such a state of intoxication at the time of the offense that he could not have formed the specific intent to kill the victim; (2) there were no witnesses who actually observed the entry of the knife into the victim's chest; and (3) the evidence indicated not that he intended to cause the victim's death, but "rather that he lost control of his emotions or was simply overcome by jealousy . . . ."

We first address the defendant's claim that the evidence of his intoxication precluded the jury from find-

ing beyond a reasonable doubt that he intended to cause the victim's death. The defendant correctly asserts that some evidence was offered indicating that he had been intoxicated at the time of the offense. To the contrary, however, Nicholas Ortiz, a Bridgeport police officer, testified that, immediately following the assault on the victim, the defendant's speech had not been slurred, he had had no observable trouble walking or descending the stairs, and that he had displayed no other observable signs of intoxication except that he had smelled strongly of alcohol. In its instructions, the court accurately informed the jury, in accordance with General Statutes § 53a-7,[4] that it must decide: (1) whether the defendant was intoxicated at the time of the offense; and (2) if so, whether that intoxication rendered him incapable of forming the intent required for the commission of the charged offenses.[5]

"Intoxication is not a defense to murder, but is relevant to the capacity to form specific intent. General Statutes § 53a-7; *State* v. *Smith,* 185 Conn. 63, 70 n.7, 441 A.2d 84 (1981); see, e.g., *State* v. *Bitting,* 162 Conn. 1, 7, 291 A.2d 240 (1971). Intoxication means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body. General Statutes § 53a-7. If the cumulative effect

---

[4] General Statutes § 53a-7 provides: "Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

[5] The defendant does not contend that the trial court's instructions regarding intoxication were inaccurate or incomplete in any way.

of all the evidence, including the evidence of intoxication, justifies finding the particular mental state beyond a reasonable doubt, the . . . verdict precludes a reversal for insufficient evidence of that mental state. *State v. Smith,* supra, 70 n.7; see *State v. Crawford,* 172 Conn. 65, 69–70, 372 A.2d 154 (1976). *State v. D'Antuono,* [186 Conn. 414, 423–24, 411 A.2d 846 (1982)]." (Internal quotation marks omitted.) *State v. Chace,* 199 Conn. 102, 106, 505 A.2d 712 (1986). Viewing the trial record in its entirety, we disagree with the defendant's contention that the evidence conclusively demonstrated that he was so intoxicated that he could not have formed the specific intent to kill the victim. The jury could reasonably have found either that the defendant was not intoxicated at the time of the offense or that his intoxication was not so debilitating as to prevent the defendant from forming the intent to kill the victim. *State v. Rollinson,* 203 Conn. 641, 666, 526 A.2d 1283 (1987). Accordingly, the defendant's evidence of intoxication did not necessarily preclude the jury from finding beyond a reasonable doubt that he possessed the requisite mental state for the commission of the crime of murder.

We need address only summarily the defendant's second insufficiency argument. Although the defendant argues that no one directly observed the knife enter the victim's chest and, therefore, evidence of his culpability was lacking, the evidence presented at trial was overwhelming that the defendant intentionally caused the fatal injury to the victim by stabbing him in the chest after he had fallen down the stairs in Bellido's apartment house. Finally, whether the defendant was motivated to kill the victim by jealousy or some other emotion, the jury could still have reasonably concluded that he intentionally caused the victim's death. We conclude, therefore, that the evidence presented at trial

was more than adequate to allow the jury to find proven beyond a reasonable doubt that the defendant was guilty of murder.

The judgment is affirmed.

In this opinion the other justices concurred.