[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On December 7, 1990, the petitioner, Luis Rivera, was convicted after a jury trial of murder in violation of General Statutes § 53a-54a(a), burglary in the first degree in violation of § 53a-101(a) and assault in the third degree in violation of § 53a-61(a)(3). On January 18, 1991, the court (Stodolink, J.), sentenced the petitioner to a total effective sentence of thirty years incarceration. The petitioner's conviction was upheld on appeal, State v. Rivera, 223 Conn. 41,612 A.2d 749 (1992). The petitioner is presently in the custody of the commissioner of correction. CT Page 14136
The petitioner filed a petition for writ of habeas corpus on August 21, 1992. In the petition he alleges that his trial counsel, Attorney Raymond Ganim, and his appellate counsel, Attorney David J. Laudano, were ineffective in their representation. Additionally, the petitioner claims that the conviction rests upon the deprivation of his constitutional right to due process in violation of the fourteenth amendment to the United States constitution and article first, § 8 of the Connecticut constitution.
The hearing on the petitioner's Amended Petition, dated November 20, 1996 was held on February 24, April 14 and April 15, 1998.
 I
On appeal, the Supreme Court found that the jury in Rivera's criminal trial could reasonably find the following facts. "The defendant and Camelia Bellido, although unmarried, had lived together as husband and wife for nineteen years. Some time in 1986, however, the couple separated, and, in August 1989, Bellido was dating the victim, Aurelio Monge. At approximately 9 p. m. on August 18, 1989, the victim arrived at Bellido's apartment in Bridgeport and began to take a shower. While the victim was in the shower, the defendant approached Bellido's apartment house from the street, began shouting to Bellido, and eventually threw a stone through one of her windows. Thereafter, the defendant forced his way into Bellido's apartment house by kicking in the front door. Having observed the defendant's approach, Bellido deduced that the defendant was looking for a fight and telephoned her daughter, Mildred Sanjurjo, and asked her to telephone the police.
Realizing that the defendant was approaching her apartment, Bellido attempted to lock the door to prevent his entry, but the defendant overpowered her and pushed his way into the apartment. Upon entering the apartment, the defendant demanded to know who was in the apartment with Bellido, and she answered that she was alone. The defendant replied that he would find out who was in the apartment and that he would kill both Bellido and whomever he found in the apartment with her. The defendant then began to search the apartment, and heard the shower running. Having heard the shower, the defendant took a knife from the kitchen and went into the bathroom, where he discovered the victim. There, the defendant held the victim at knife point and ordered him, CT Page 14137 unclothed, to leave the apartment. As he left, the victim, still wet from the shower, fell down a flight of stairs. After the victim had fallen, the defendant approached him and lifted the knife above his shoulder to stab the victim. The defendant then began swinging the knife at the victim as the victim attempted to protect himself. One of the defendant's knife thrusts entered the victim's chest. Severely injured, the victim ran from the house and into the street where he collapsed. As the victim lay in the street, the defendant said, `You finally die you son of a bitch.' Although the victim was hospitalized almost immediately, he died four days after the assault as a result of a stab wound to his heart." State v. Rivera, supra, 223 Conn. 42.
From a review of the trial transcript, Petitioner's Exhibit 1, and the testimony and other exhibits from the habeas hearing, the court makes the following findings of fact.
The trial court charged the jury on murder, four separate lesser included manslaughter charges, burglary, assault in the third degree, and manslaughter in the first degree by virtue of the affirmative defense of extreme emotional disturbance. Trial counsel had submitted to the trial court proposed jury instructions on extreme emotional disturbance. In fashioning this proposal, trial counsel relied upon his own trial experience and pattern jury instructions from Borden Orland, 5 Connecticut Practice Series: Connecticut Jury Instructions (1986). Petitioner's Exhibit 12. The trial court accepted the submitted instruction, in part, and gave the following instruction to the jury: "I will now discuss with you the elements of the affirmative defense of extreme emotional disturbance. There are three elements to this affirmative defense. The defendant's emotional disturbance was not a mental disease or defect that rises to the level of the affirmative defense of mental disease or defect which affirmative defense was not presented by the defendant. That is mental disease or defect. Number two, this is the second element, the defendant was exposed to an extremely unusual and overwhelming state that is more than mere annoyance or unhappiness. And, three, the defendant had an extreme emotional reaction to that state as a result of which there was a loss of self control and his reason was over born by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions."[1] Petitioner's Exhibit 1, 632-633.
The jury asked numerous questions of the court throughout CT Page 14138 their deliberation with regard to the affirmative defense of extreme emotional disturbance. The jury received the court's charge on a Friday after which they were released for the weekend. Upon returning to commence their deliberations on Monday, the jury asked for re instruction. The jury requested the court to "define what an extreme emotional disturbance means under manslaughter in the first degree . . ." Petitioner's Exhibit 1, at 666. The court then repeated its instruction on extreme emotional disturbance that it had originally given. The next relevant request by the jury was "for a clear explanation of the defense of extreme emotional disturbance." Petitioner's Exhibit 1, at 695. The court again responded by rereading the charge to the jury that it originally had given. The next relevant request from the jury asked "may we hear again where the burden of proof lies upon the defendant in layman's terms. Thank you. In your own words." (Emphasis added.) Petitioner's Exhibit 1, at 707. At this point, trial counsel indicated that he believed that the jury was confused.[2] The state's attorney agreed with trial counsel that the burden of proof appeared to be the source of the problem. Id. The court agreed and re instructed the jury on the burden of proof issues. Finally, the jury returned with their final request that the court answer the question "Dear Judge, does the defendant have to prove extreme emotional disturbance? Yes or no. Thank you very much. Maryanne." Petitioner's Exhibit 1, at 716. The court again correctly instructed the jury on the law with respect to the burden of proof.
A review of the trial transcript indicates little actual evidence of extreme emotional disturbance. Other than testimony from Bellido that the petitioner seemed to be in a fighting mood and Rios' testimony that the petitioner "looked a little upset" and "looked angry," there is no other evidence to support the defense. In fact the petitioner testified at the criminal trial that he fully recalled all the events of the night in question and that he wasn't "mad" and was "normal." The petitioner testified that the victim impaled himself on a knife when he fell down the stairs of the residence. The petitioner's testimony not only did not support a claim of extreme emotional disturbance but rather supported the conclusion that no disturbance existed. This confirmed trial counsel's testimony at the habeas hearing that the principle defense was that the petitioner did not stab the victim.
At the criminal trial, on cross-examination, the petitioner CT Page 14139 gratuitously offered non responsive answers to questions posed by the state's attorney. Petitioner's Exhibit U, at 481. The testimony of the petitioner included the statement that "If your referring to what I said to the police, that day I was quite bad off after what happened . . ." Id. When the state's attorney then began to question the petitioner concerning this statement, trial counsel indicated that he was unaware of any statement but admitted to having received as part of the pre-trial disclosure a copy of the police report containing the reference to an oral statement by the petitioner. Id., 491. In that statement, he told the police that he knew nothing about a stabbing. Id., 498. The state's attorney then asked the petitioner whether at the time he made the statement he considered the incident to be a joke. Id., 499-500. Trial counsel objected and the objection was sustained.Id., 500. Trial counsel then, out of the presence of the jury, raised the issue of whether a hearing on the motion to suppress would be necessary to determine the voluntariness of the statement. Id., 501. Since the gratuitous statement of the petitioner was already before the jury, trial counsel indicated to the court that he believed that a suppression hearing was not necessary if the inquiry ended without going further into the petitioner's demeanor. Additionally, trial counsel argued that the statement was not an admission by the petitioner. The court determined that the statement was being used for impeachment purposes and added that it was for the jury to decide whether or not it was in fact inconsistent with the petitioner's testimony.Id., 504. The transcript of the criminal trial reflects that trial counsel was taken by surprise by the use of the statement by the state. The statement was given to the police after his Miranda rights were read to the petitioner in Spanish and he signed a form confirming that he had been read those rights.
Trial counsel was an experienced criminal trial attorney. Over his lengthy career, the petitioner's trial counsel tried to completion approximately ten homicide cases in addition to approximately one hundred felony cases. His recollection of the events surrounding his representation of the petitioner was very limited, due in large part to the passage of nine years from the time he first was retained as the petitioner's trial counsel.
In 1989, the petitioner's family engaged trial counsel for the purpose of representation of the petitioner during his criminal case. After filing his appearance, trial counsel entered into what can best be described as fruitless negotiations with the state's attorney. Additionally, he attended court ordered CT Page 14140 pre-trial conferences that similarly failed to lead to any resolution. The petitioner, who throughout this matter was unable to make the bond that was set, was transported to court for the pre-trial proceedings. While at the court house, trial counsel would visit him in the lock-up to discuss the case and the pre-trial proceedings.
Trial counsel discussed matters with the petitioner without the assistance of an interpreter and also indicated that he received written communications from the petitioner during the course of his representation. While trial counsel's recollection of these events was not detailed, he was certain that the petitioner understood their discussions and the proceedings although he did indicate that the understanding was somewhat limited. At the habeas hearing, the petitioner called as a witness William Alvarado, the chief court interpreter for the state of Connecticut since 1994. In that position, Alvarado has custody and control over the records of the Office of the Court Interpreter. His testimony, although not conclusive, was sufficiently convincing, coupled with the vague recollection of trial counsel, to sustain the petitioner's burden of establishing that no interpreter was present during jury selection.
Additional findings of fact will be made as required in the discussion of each issue.
 II
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. Copas v. Commissioner of Correction,234 Conn. 139, 153, 662 A.2d 718 (1995). The petitioner's right to effective assistance of habeas counsel is predicated on General Statutes § 51-296, which provides for the appointment of counsel for an indigent person in any habeas corpus proceeding arising from a criminal matter. Lozada v. Warden, 223 Conn. 834,838, 613 A.2d 818 (1992).
The constitutional right to competent representation does not require representation with no error. To establish that his trial counsel was ineffective, the petitioner must prove both that his counsel's performance was deficient and that the petitioner was actually prejudiced by such deficient performance. Strickland v.Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674
CT Page 14141 (1984); Copas v. Commissioner of Correction, supra,234 Conn. 154; Lozada v. Warden, supra, 223 Conn. 842-43; Bunkley v.Commissioner of Correction, 222 Conn. 444, 445, 610 A.2d 598
(1992). In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation "fell below an objective standard of reasonableness." (Internal quotation marks omitted.) Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989). "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) Jeffrey v. Commissioner of Correction,36 Conn. App. 216, 219, 650 A.2d 602 (1994). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotations marks omitted.)Johnson v. Commissioner of Correction, 36 Conn. App. 695, 703,652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra,466 U.S. 687. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, a successful petitioner is required to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner of Correction, supra, 234 Conn. 147.[3]
 III
A. Extreme Emotional Disturbance
The petitioner first claims that trial counsel was ineffective in his representation of the petitioner by failing to request a correct jury charge on the issue of extreme emotional disturbance and for misstating the law in his summation. The petitioner claims that there was strong evidence at trial of extreme emotional disturbance but that counsel failed to take advantage of it by using an incorrect statement of the law. CT Page 14142
Preliminarily, the respondent claims that this issue was decided on direct appeal to the Supreme Court and therefore this court is barred from considering this claim. The respondent points to the language in the opinion commenting on the court's instructions to the jury as support for this position. The Supreme Court stated that the "trial court's instructions and re instructions were clear and comprehensible and sufficient to provide guidance to the jury in applying the law to the facts it [found] established." State v. Rivera, supra, 223 Conn. 47. The petitioner argues that this issue was not appealed and at best the language in the opinion was not directed at the quality of the extreme emotional disturbance charge. The court agrees with the petitioner. The Supreme Court was presented with the issue of whether the petitioner was deprived of a fair trial "because the trial court improperly failed to re instruct the jury, pursuant to his request, regarding the elements of first and second degree manslaughter. Particularly, he claims that the trial court's failure to re instruct the jury regarding the manslaughter offenses unduly emphasized the defendant's burden of proof with respect to the affirmative defense of extreme emotional disturbance." Id., 44. The content of the instruction on extreme emotional distress was not an issue. Petitioner's Exhibit 16, at 3. Therefore, this court is not precluded by the prior decision from considering this claim.
The petitioner claims that by charging the jury as it did the burden of proof on the petitioner was impermissibly expanded to require that he prove that he did not suffer from "mental disease or defect." Further, the petitioner claims that by including in its instruction the statement that the petitioner was not claiming that he suffered from mental disease or defect the jury was, in effect, instructed that the petitioner had not proven extreme emotional disturbance.
In State v. Elliott, 177 Conn. 1, 411 A.2d 3 (1979), the Supreme Court stated that "we hold that in determining whether the defendant has proven the affirmative defense of an extreme emotional disturbance by a fair preponderance of the evidence as a mitigation of murder to manslaughter the jury must find that: (a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined in the Penal Code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as CT Page 14143 a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions." The same language used in Elliott, with respect to the affirmative defense of extreme emotional disturbance, was set forth in State v. D'Antuono, 186 Conn. 414, 420, 441 A.2d 846
(1982) without disapproval.
In State v. Foreshaw, 214 Conn. 540, 547, 572 A.2d 1006
(1990), the Supreme Court again was faced with the issue of whether the same charge on extreme emotional disturbance improperly added to the defendant's burden of proof, confused the jury, or misstated controlling law. The court declined to consider the claim as it had not been preserved at trial and did not meet the requirements for review set forth in State v. Evans,165 Conn. 61, 70, 327 A.2d 576 (1973) or State v. Golding,213 Conn. 233, 238-42, 567 A.2d 823 (1989). The court, however, did comment that "While it may well be that the instruction at issue was poorly worded, we cannot say that the inclusion of the challenged language, viewed in the context of the entire jury charge, `constituted a manifest injustice to the defendant so as to impair the effectiveness or integrity of [her] trial.'" Statev. Foreshaw, supra, 547.
In State v. Forrest, 216 Conn. 139, 578 A.2d 1066 (1990), the Supreme Court commented further on the Elliott case by stating "[T]he defendant, however mischaracterizes the three criteria set forth in Elliott as elements of the affirmative defense of extreme emotional distress. Section 53a-54a describes the two elements of that defense as: (1) the defendant committed the offense under the influence of extreme emotional disturbance; and (2) there was a reasonable explanation or excuse for the defendant's extreme emotional disturbance. When we adopted the three criteria in Elliott, we did not rewrite § 53a-54a, nor did we substitute our own `elements' for those specified by the legislature. We merely interpreted the meaning of the phrase `extreme emotional disturbance,' and as we explained in Elliott, enumerated `understandable guidelines' for instructing a jury in determining the presence or absence of that mental condition. SeeState v. Elliott, supra, 8-9." State v. Forrest, supra, 148. Thus, the law on the affirmative defense of extreme emotional disturbance was clarified as of the decision in Forrest.
The pattern jury instruction used by trial counsel (Petitioner's Exhibit 12) is not an incorrect statement of the CT Page 14144 law of extreme emotional disturbance despite their inclusion of the additional element requiring the defendant to prove that he is not suffering from mental disease or defect. The pattern jury instructions assume that a separate charge has already been given to the jury with respect to mental disease or defect. The instruction states: "This affirmative defense [of extreme emotional disturbance] is different from the affirmative defense of mental disease or defect, which I explained to you earlier." (Emphasis added), Petitioner's Exhibit 12, at 229. Thus, while not technically an "element" of the affirmative defense of extreme emotional disturbance, if an instruction has already been given concerning mental disease, this added "element" in the instruction on extreme emotional disturbance aides the jury in distinguishing the difference between the two affirmative defenses.
With this background, the court will now turn to the issue of whether trial counsel rendered ineffective assistance by submitting the pattern jury charge on extreme emotional distress to the court and by failing to take exception to the charge that was given in order to preserve the issue for appeal.
At the habeas hearing, the petitioner's expert, Attorney Thomas Farver, testified as to whether reasonable defense counsel should have been aware of the decision in Forrest which had been decided a few months prior to the commencement of the criminal trial. The expert opined that "Again, I have to say very candidly, that I don't think that the standard is that every attorney out there knows every change in the case law on every case he's tried, and I wouldn't presume to try to go that far. My problem becomes, if you make the assumption that you've now done your homework enough that you've gone at least to your standard instructions, and now you see that the jury focuses on a problem here, then, certainly, that's when you would go back and double check yourself, if you haven't, already." Transcript, April 15, 1998, at 37-38. Thus, the petitioner's expert did not necessarily find fault with the initial submission of the charge to the jury when using as a standard a "reasonably competent criminal trial counsel." In addition, he indicated that use of the pattern jury instruction was not below the standard, in and of itself, unless the instruction involved the major theory of the defense's case. If the instruction was the focus of the defense, the expert opined, then the pattern jury instruction should be thoroughly researched and tailored to the specific facts of the case. Trial counsel testified that the primary defense in this matter was CT Page 14145 that the defendant did not stab the victim. This is confirmed by the criminal trial transcript. Thus, the expert did not find fault with trial counsel's representation to this point. The court agrees.
Additionally, the expert opined that in a situation such as the one presented by this habeas petition, where the jury had sought re instruction, reasonably competent trial counsel would have taken a second look at the instruction after the jury began to focus on the extreme emotional disturbance. The review by counsel of the instruction and the research of case law presumably would have uncovered the then recently decided Forrest
case. The court would agree with the expert's opinion if trial counsel had reason to believe that the jury was troubled by the elements of extreme emotional disturbance rather than on whose burden it was to prove it.
It is evident from the criminal trial transcript that the jury was unsure as to whether the state or defendant had the burden of proof on the affirmative defense. This may have resulted from complexity and length of the instruction. The jury's questions appear to have been prompted by their confusion between the state's burden of proving the lesser included offense of first degree manslaughter beyond a reasonable doubt, from the defendant's burden of proving the affirmative defense of extreme emotional disturbance by a preponderance of the evidence. Each request for additional instruction by the jury became more specific with regard to the question of burden of proof.
At no point did the jury indicate any specific problem with that portion of the charge concerning mental disease or defect. Nor did the jury request a definition of mental disease or defect and no such definition was given by the court in its instructions. The state in its summation did not argue that the petitioner failed to provide any evidence that he was not suffering from a mental disease or defect and therefore had failed to prove extreme emotional disturbance. There was no testimony regarding mental disease or defect at the criminal trial and the testimony of each of the witnesses, including the petitioner, did not provide any evidence or inference that the mental health of the petitioner was in question. Taking all of the testimony into consideration as well as the instructions given by the trial court, the court finds that the petitioner has not shown by a preponderance of the evidence that the jury was mislead into believing that the petitioner was required to CT Page 14146 affirmatively prove that he was not suffering from a mental disease or defect, or that the court was directing the jury to find against the petitioner on the issue of extreme emotional distress.
Additionally, the court notes the principle often expressed by our appellate courts that "We have eschewed, and continue to eschew, judging individual instructions in artificial isolation from the overall charge." State v. Stevenson, 198 Conn. 560, 571,504 A.2d 1029 (1986). The factual issues in this case mitigate against the possibility of jury confusion. See State v. Austin,244 Conn. 226, 237, 710 A.2d 732 (1398). The court finds that the charge on extreme emotional disturbance, taken in the context of the trial and the court's complete charge, was not misleading so as to put into question the fairness of the trial.
Of course, it is impossible to know what mental processes were employed by the jury or whether they were actually mislead. However, applying the Strickland standard, the burden of establishing prejudice by a fair preponderance of the evidence falls squarely on the petitioner.
The petitioner has failed to sustain his burden to prove by a preponderance of the evidence that the petitioner was prejudiced by counsel's failure to submit a correct request to charge to the court or to take exception to the court's charge or that trial counsel failed to meet the standard of reasonably competent defense counsel.
The petitioner also argues that trial counsel failed to preserve the issue for appeal. The court finds that the petitioner has failed to demonstrate that he would have been entitled to a reversal on appeal and that the confidence in the underlying verdict has been undermined. Johnson v. Commissioner,34 Conn. App. 153, 164, 640 A.2d 1007, cert. denied,229 Conn. 919, 644 A.2d 914 (1994)
The petitioner also argues that trial counsel limited his summation on the extreme emotional disturbance defense to the common law "heat of passion" defense. In doing so the petitioner claims that he unduly limited his argument rather than arguing the more encompassing defense of extreme emotional disturbance. The petitioner correctly states that the common law "heat of passion" has been subsumed into the larger category of extreme emotional disturbance. The court's instructions did not limit the CT Page 14147 jury in its consideration of extreme emotional disturbance to the common law heat of passion defense. The jury received no definition from the court as to what the phrase "heat of passion" may have meant at common law. The use of the phrase was a descriptive way by counsel to refer to the facts encompassing the source of the alleged extreme emotional distress. The court finds that the use of this terminology by trial counsel neither was below the standard of a reasonably competent criminal attorney nor did it prejudice the petitioner.
In addition, the petitioner claims that "appellate counsel did not raise on appeal any challenge to the propriety of the trial court's instruction on extreme emotional disturbance." Petitioner's Trial Brief, 20. The court concludes that, since the issue had not been preserved at trial, raising it on appeal would not have been any more effective than it was in State v.Foreshaw, supra, 214 Conn. 540 and therefore the petitioner cannot sustain his burden of demonstrating that he was prejudiced.
B. Motion to Suppress
The petitioner next claims that trial counsel's failure to pursue a motion to suppress to determine the admissibility of the petitioner's statement to the police shortly after his arrest that he knew nothing about a stabbing was below the standard of reasonably competent trial counsel. Petitioner claims that the effect of failing to pursue this motion was the admission of a statement made to the police by the petitioner. In a related claim, the petitioner alleges that the petitioner's post-Miranda silence was used against him due to the ineffective assistance of trial counsel in violation of his constitutional rights. In support of this contention the petitioner cites Doyle v. Ohio,426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed. 91 (1976). The petitioner also claims that trial counsel was ineffective in that he emphasized the petitioner's invocation of his constitutional right to remain silent by questioning the petitioner concerning the Miranda warnings and on his waiver of his right to remain silent on four separate occasions before the jury.
The petitioner speculates that "it is reasonably possible that if a motion to suppress had been pursued, the trial court would have found that the state failed to establish the petitioner understood and waived his right to remain silent on these facts." In support of this claim the petitioner points to CT Page 14148 the testimony that was produced at the criminal trial.
The court has fully reviewed the transcript of the criminal trial noting, in particular, the testimony of the police officer and petitioner with regard to the use of alcohol and the demeanor of the petitioner at the time of the arrest. The court concludes that the evidence brought forth at the criminal trial and at the habeas hearing is insufficient to determine that the waiver was involuntary. "The determination of whether a defendant has knowingly and intelligently waived his rights under Miranda depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. To determine whether an individual had the capacity to understand the warnings, the trial court may consider: the defendant's experience with the police and familiarity with the warnings, his level of education, his intelligence including his IQ, his vocabulary and ability to read and write in the language an which the warnings were given, his age, intoxication, his emotional state and the existence of any mental disease, disorder or retardation." (Citations omitted; internal quotation marks omitted.) State v. Santiago,245 Conn. 301, 320, ___ A.2d ___ (1998). While the testimony offered at trial indicates that the petitioner had been drinking and was "not himself," none of the testimony offered at trial nor any testimony offered at the habeas hearing would lead this court to conclude that the acknowledgment of his receipt of the Miranda warnings or his waiver of his right not to make a statement was involuntary. Therefore, the court finds that the petitioner has failed to establish that it was more probable than not that had the motion to suppress been pursued it would have been successful. Furthermore, the petitioner has also failed to demonstrate that if the petitioner's statement to the police been suppressed the result of the proceeding would more probably than not have been different. The admission into evidence of the statement made to the police was not so detrimental to the petitioner as to place into question the fairness of the conviction.
The fact that trial counsel was not aware of the statement until after his client took the stand and testified, while inexcusable, also did not prejudice the petitioner. It is unlikely that had counsel been fully aware of the potential use of the statement at the time of trial a different decision would have been made regarding his client testifying. The petitioner's main defense to the charge was that he did not stab the victim. CT Page 14149 Trial counsel recognized that his client's testimony was critical to his claim of innocence. The evidence that he was the perpetrator was substantial. The only testimony that supported the petitioner's claim of innocence came from the mouth of the petitioner. The risk that the petitioner's statement to the police would be used to impeach his credibility was greatly outweighed by the need to call the petitioner as a witness. This is particularly true when the statement that is offered for impeachment purposes does not clearly contradict the testimony of the petitioner. The theory of the petitioner's case as reflected in the petitioner's testimony was that the victim fell on the knife as he tumbled down the stairs not that he was stabbed. Thus, the petitioner has failed to demonstrate the prejudice required by the Strickland test for ineffective assistance of counsel.
The petitioner claims that trial counsel was ineffective when he questioned the petitioner in the presence of the jury concerning his statement to the police after receiving the Miranda warnings and the termination of the questioning by the police thereafter. This, it is alleged, lead to the introduction of evidence that would otherwise be inadmissible under Doyle v.Ohio, 426 U.S. 610. Doyle stands for the proposition that it is fundamentally unfair and a violation of the defendant's due process rights to use the defendant's post-Miranda silence to impeach his testimony in a criminal trial. Neither is it permissible to use such evidence to imply guilt nor to indicate a consciousness of guilt. State v. Hughes, 45 Conn. App. 289, 294,696 A.2d 347 (1997). In this case, however, the petitioner was not silent after receiving his Miranda warnings but rather made a statement to the police that he knew nothing about a stabbing.Doyle proscribes the use of the petitioner's silence against him but does not protect the petitioner against his own post-Miranda statements.
The petitioner also argues that trial counsel needlessly called the police officer to question him about the petitioner's statement and the fact that they had read the petitioner his rights and the petitioner had signed a waiver of his right to remain silent. The petitioner claims that this furthered a negative inference in the mind of the jury that the petitioner did not tell the police all he knew. The court disagrees. While the testimony may not have had any positive effect on the jury, the court finds no prejudice to the petitioner by virtue of counsel's pursuing this line of questioning. CT Page 14150
C. Lack of Court Interpreter
The petitioner also claims that the lack of an interpreter at the jury selection phase of the trial violated his right to effective assistance of counsel. Second Amended Petition, February 19, 1998, paragraphs 29, 32 and 33.
As has been previously noted, effective assistance of counsel requires that the petitioner demonstrate that his actions were not those of a reasonably competent criminal attorney and that those actions prejudiced the petitioner. The petitioner has not demonstrated or even suggested how he was prejudiced so that the confidence in the result of the jury trial was undermined. In addition, the court is not convinced that the petitioner's lack of understanding of the English language was so deficient that he was unable to understand the voir dire of the prospective jurors or communicate with counsel.[4]
D. Due Process Violations
As to the third count of the petition alleging due process violations, the court finds that these claims are subsumed by the ineffective assistance of counsel claims and need not be addressed separately. Evans v. Commissioner of Correction,37 Conn. App. 672, 693, 657 A.2d 1115, cert. denied, 234 Conn. 912,660 A.2d 354 (1995). If counsel had been ineffective in violation of the mandates of the sixth amendment to the United States constitution, then it follows that the petitioner would have been deprived of his rights to due process. Commissioner of Correctionv. Rodriguez, 222 Conn. 469, 476, 610 A.2d 631 (1992).
For all of the foregoing reasons the petition is dismissed.
Zarella, J.